Argued and submitted October 31, 1980, resubmitted in banc February 12, affirmed February 18, 1981

## OREGON-WASHINGTON CARPENTERS-EMPLOYERS HEALTH AND WELFARE, PENSION, APPRENTICESHIP AND TRAINING, et al,
*Respondents,*
*v.*
DYKSTRA,
*Defendant,*
*and*
DYKSTRA,
*Appellant.*

(No. A7807-11571, CA 15907)

623 P2d 1137

Michael J. Gentry, Portland, argued the cause for appellant. With him on the briefs was Tooze, Kerr, Marshall & Shenker, Portland.

David S. Paull, Portland, argued the cause for respondents. With him on the brief was Paul T. Bailey, Portland.

GILLETTE, J.

Thornton, J., specially concurring.

**GILLETTE, J.**

This is an action at law by plaintiffs, union trust funds, for interest and penalties due in connection with certain delinquent union pension plan contributions. Defendants Dykstra, dba Dykstra Construction Company, were the employers allegedly liable for the penalties and interest. Defendant Joe Dykstra appeals from a judgment in favor of the plaintiff funds. We affirm.

The essential facts are not disputed:

About June 1, 1973, a collective bargaining agreement was entered into between the Oregon-Columbia Chapter of the Association of General Contractors of America, Inc., and the Oregon State and Southwest Washington District Council of the United Brotherhood of Carpenters and Joiners of America. This agreement, known as the "Carpenters Master Labor Agreement," provided generally for the wages, hours and working conditions for the employes of signatory employers, and specifically provided that all signatory employers were obligated to pay certain sums into the Health and Welfare, Pension, Vacation, and Apprenticeship and Training Trust Funds administered by the plaintiff-trustees. The agreement as amended was in effect for the period beginning June 1, 1975, and ending on May 31, 1980. The following language in the Master Labor Agreement concerned all four trust funds:

> "It shall be a violation of this Agreement for the Union to allow workmen covered by the Agreement to work for an employer who fails, after due notice, to make the proper contributions to the Apprenticeship Fund in accordance with the provisions of this Agreement.

> "In the event an employer fails to make the monetary contributions in conformity with this Article of the Agreement, the Union is free to take any economic action against such employer it deems necessary, and such action shall not be considered a violation of this Agreement."

Apparently Dykstra Construction Co. began its operations as the sole proprietorship of defendant Joe Dykstra. On May 2, 1973, defendants Joe Dykstra and John E.

Dykstra,[1] then doing business as the partnership of Dykstra Construction Company, entered into an agreement with the Oregon State Council of Carpenters and the Southwest Washington District Council of Carpenters entitled "Memorandum Agreement." This agreement was signed by John E. Dykstra on behalf of the business. Its purpose was generally to bind the signatory employer to the terms and conditions of the Master Labor Agreement, with the exception of any provisions relating to the subjects of strike, lockout, jurisdictional disputes, and grievance procedures, as well as to bind the signatory employer to the agreements which govern the Trust Funds administered by plaintiffs.

Because of ongoing regional labor negotiations, a second, interim agreement was entered into between defendants and the union on June 4, 1973, again signed by John E. Dykstra. A third agreement—the one involved in this case—was entered into between defendants and the union on November 8, 1973. Joe Dykstra signed on behalf of the business. This was the last agreement executed between the union and Dykstra Construction Co.

The defendants' business was apparently incorporated sometime in 1973 or 1974. With the exception of the Interim Agreement of June 4, 1973, all of the memorandum agreements signed on behalf of the Dykstra business contained identical language requiring the employer to pay contributions into the several trust funds as provided in the Master Agreement, making them binding regardless of a change of entity, and further providing that any change or cancellation of an agreement by either party would require written notice at least 60 days prior to the agreement's annual renewal date.

The pertinent language in the agreement was:

"6. This Memorandum Agreement shall be binding upon the heirs, executors, administrators, purchasers, and assigns of the Employer and shall be binding upon the Employer regardless of a change of entity, name or association or joint venture and shall bind any entity or venture who is a principal, associated with the Employer. If

---

[1] John Dykstra was removed from the case for reasons not pertinent to this opinion.

the Employer is a corporation, or other business entity other than an individual, the individual signing this agreement on behalf of the Employer acknowledges that his signature binds himself individually as well as the corporation or other business entity.

" * * * * *

"This Agreement shall remain in full force and effect until May 31, 1976, and shall continue from year to year thereafter unless either party shall give written notice to the other of a desire to change or cancel it at least 60 days prior to May 31, 1976, or May 31 of any succeeding year. The Employer and the Unions shall be bound by any rules or extensions of the Master Agreement and the Trust Agreements, or any new agreements, unless an appropriate written notice is given to the other party at least 60 days prior to May 31, 1976, or any subsequent year, of their intent not to be bound by any new, renewed, or extended agreement."

The Dykstra Construction Company became delinquent in remitting its trust contributions for the months of September, October, November and December of 1978, and January of 1979. The plaintiffs filed mechanics liens on the amounts owed against real property of a third party. The amounts of the liens were then paid by the third party, with the exception of $5,266.06 allegedly due for liquidated damages and late charges. This action was brought for that amount.

At trial, defendants sought to prove that on or about October 1, 1977, defendant Joe Dykstra sold his entire interest in the business to his children and that he subsequently so informed William Epperly, business representative for Millrights Local 1857, by telephone. Epperly was one of the signers of the November 8, 1973, agreement on behalf of the union. Dykstra testified that during that telephone conversation he informed Epperly of the sale of his business and stated that he was no longer responsible for the operation of the company. Epperly only recalled being advised of the sale and a statement to the effect that Dykstra planned to do some fishing and retire. Thereafter, sometime prior to November 1, 1977, Epperly contacted Dykstra, inviting him to attend a union meeting. On November 1, 1977, Dykstra responded to Epperly by letter containing in part the following language:

"I would like to remind you of our earlier conversation pertaining to the sale of the Dykstra Construction. As you know, my children have taken over the Company. As of October 1, 1977, I was no longer owner of Dykstra Construction."

The trial court refused to admit the testimony of Dykstra and Epperly concerning their conversation, and refused to admit Dykstra's letter to Epperly. Dykstra assigns these rulings as error, contending that, while he did not give the formal notice required in the agreement, the telephone conversation together with his November 1, 1977, letter constituted substantial compliance with the formal notice and requirement that he is therefore not personally liable for the penalties and interest which the union seeks.

The trial court's ruling was correct for a series of reasons: (1) There was no showing that Epperly ever understood that Dykstra was claiming he was relieved of his liabilities *to the union trust funds.* The mere fact that someone else was running the business would not relieve Dykstra, as a signatory to the agreement.[2] (2) There is no sufficient evidence from which a trier of fact could conclude that Epperly had the authority unilaterally to relieve Dykstra of his obligation, even if he understood that to be what Dykstra wanted. The fact that Epperly was one of the persons who signed the November 8 agreement on behalf of the union did not give him actual or apparent authority to change the agreement with respect to Dykstra's obligation to the trust funds. *See Craswell v. Biggs,* 160 Or 547, 86 P2d 71 (1938). (3) In any event, Dykstra's attempt to modify the agreement to exclude him from liability for the period in question was not timely.

Affirmed.[3]

---

[2] Dykstra also argues for a construction of paragraph 6 of the contract which would relieve him of liability. Without discussing his theory in detail we can say that, as we read it, any reasonable construction of that paragraph would bind Dykstra.

[3] Dykstra's other assignments of error do not require discussion.

**THORNTON, J.,** specially concurring.

I concur in the result reached by the majority but disagree with the rationale offered in support of its holding. In reaching its conclusion the majority states

"(1) There was no showing that Epperly ever understood that Dykstra was claiming he was relieved of his liabilities *to the union trust funds. * * *.*" (Emphasis theirs.)

I submit that the above statement is beside the point. Under the applicable case law, Epperly could not legally have acted on the basis of defendant's oral statement and subsequent letter even if he had wanted to. *Craswell v. Biggs,* 160 Or 547, 86 P2d 71 (1938). What Epperly understood or didn't understand is immaterial. Defendant's only recourse for changing the agreement was by following the procedure provided for in the agreement. Moreover, oral modification of a collective bargaining agreement is violative of Section 302(c)(5) of the Labor Management Relations Act, 29 USC § 186. Any evidence of such modification is inadmissible. *Gatliff Coal Co. v. Cox,* 152 F2d 52 (6th Cir 1945). *Accord: Lewis v. Seanor Coal Co.* 382 F2d 437 (3rd Cir 1967).

Next the majority states

"(2) There is no sufficient evidence from which a trier of fact could conclude that Epperly had the authority unilaterally to relieve Dykstra of his obligation * * *."

Here again the above statement implies that this is somehow a fact question. In my view there is no fact question to be decided. Rather it is a matter of construing the contract. This is purely a question of law.

Lastly, the majority states

"(3) In any event, Dykstra's attempt to modify the agreement to exclude him from liability for the period in question was not timely."

I find the above language confusing. As I see the question presented, lack of timeliness is not the issue. Dykstra didn't follow *any* of the provisions for amending the agreement. This is the central and controlling reason why his contentions must fail.